**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

| | |
|---|---|
| **LONSTEIN LAW OFFICE, P.C., JULIE  C.  LONSTEIN, and WAYNE D. LONSTEIN,** : | Civil Action No: |
| : | |
| : | |
| **Plaintiffs,** : | |
| : | **COMPLAINT** |
| : | |
| **-against-** : | |
| : | |
| **STARSTONE SPECIALTY INSURANCE COMPANY,** : | |
| : | |
| **Defendant.** : | |

-------------------------------------------------------------X

      Plaintiffs, Lonstein Law Office, P.C., Julie C. Lonstein and Wayne D. Lonstein by their attorneys Nesenoff & Miltenberg, LLP, respectfully allege as follows, based upon their own knowledge as to their own acts and on information and belief as to all other matters:

**INTRODUCTION**

      1.    Plaintiffs, Lonstein Law Office, P.C., Julie C. Lonstein and Wayne D. Lonstein ("Plaintiffs") brings this action for inter alia, a declaratory judgment pursuant to CPLR §3001 in order to resolve an actual justiciable controversy with Defendant Starstone Specialty Insurance Company ("StarStone") over whether Defendant has any obligation to provide coverage to Plaintiffs in the defense of the counterclaim alleging Misappropriation of Trade Secrets filed against Plaintiffs by AT&T Services Inc. ("AT&T") in an arbitration proceeding, pursuant to a Lawyers Professional Liability Insurance Policy issued by Defendant StarStone, policy no. X76960222APL (the "Policy").

2.      On or about April 4, 2022, Plaintiffs commenced an arbitration with the American Arbitration Association entitled *Lonstein Law Office, P.C., Julie Lonstein, and Wayne D. Lonstein v. AT&T Services, Inc. and DIRECTV, LLC,* Case no. 01-22-0001-4315 (the "Arbitration").  A copy of the Arbitration Statement is annexed hereto as Exhibit "A"

3.      In response to the filing of the Arbitration Statement, on or about June 6, 2022, Respondents in the Arbitration filed their Answer and Counterclaims.  The Counterclaims allege, *inter alia*, that Plaintiffs engaged in wrongful conduct and specifically stole and mishandled trade secrets.  A copy of the Answer and Counterclaims is annexed hereto as Exhibit "B".

4.      Upon receiving the Answer and Counterclaims, on or about June 22, 2022 Plaintiffs promptly notified StarStone of the Counterclaims and demanded that StarStone provide a defense and indemnification pursuant to the Policy.

5.      Plaintiffs have not previously applied for coverage based upon a claim of misappropriating trade secrets.

## THE PARTIES

6.      The Lonstein Law Office, P.C. is a corporation duly organized and existing under the laws of the State of New York with an address of 190 South Main Street, Ellenville, New York 12428.

7.      Julie C. Lonstein is an individual and a resident of the State of New York with a business address of 190 South Main Street, Ellenville, New York 12428.

8.      Wayne D. Lonstein is an individual and a resident of the State of New York with a business address of 190 South Main Street, Ellenville, NY 12428.

9.      Upon information and belief Defendant Starstone Specialty Insurance Company is a corporation and/or insurance company duly organized and existing under laws of a state other than New York, with a principal place of business in New Jersey.

## VENUE AND JURISDICTION

10.      Venue is appropriate pursuant to 28 U.S.C. §1391.

11.      This Court has jurisdiction over Defendants pursuant to 28 USC §1332.

## FACTUAL BACKGROUND

12.      Plaintiff Lonstein Law Office, P.C. ("LLO") is a law firm previously retained by non-party DIRECTV, LLC  (DIRECTV, LLC as successor-in-interest to AT&T Services, Inc. as successor-in-interest to DIRECTV, Inc. is hereinafter referred to as "AT&T").  Plaintiffs were retained from approximately 2006 to 2018 to identify, investigate and bring claims and/or civil actions against businesses or individuals throughout the United States who illegally acquired DIRECTV commercial services without authorization or payment therefore or by misrepresenting they are an individual when the services are actually being received and exhibited in a commercial venue or establishment.

13.      On or about August 29, 2006 DIRECTV and Plaintiffs entered into a retainer agreement wherein Plaintiffs agreed to represent DIRECTV and DIRECTV agreed to indemnify and hold Plaintiffs harmless.

14.      On or about October 2, 2009, Plaintiffs entered into a supplemental Retainer Agreement with DirectTV further solidifying the attorney client relationship and reiterating DIRECTV's agreement to indemnify and hold Plaintiffs harmless in their representation of DIRECTV.

3

15.    Plaintiffs, as a result of their representation of DIRECTV, were dragged into multiple lawsuits as co-defendants with DIRECTV.

16.    As a result of its representation of DIRECTV, LLO was named as co-defendants, along with DIRECTV, in the actions set forth below.

   a.  *Doneyda Perez v. Directv Group Holdings, LLC, et al*., Case no. 8:16-cv-01440, U.S.D.C. C. Dist.  CA, (the "Perez Action").
   b.  *Thu Hone Thi Nguyen a/k/a Thu-Thuy Nguyen individually and d/b/a US Nails v. Lonstein Law Offices, P.C., et al*., Case no. 1:16-cv-01339, U.S.D.C.   N.Dist. GA Northern District of Georgia, Atlanta Division, -ELR, (Third-Party Action) (the "US Nails Action").
   c.  *Roberson v. DIRECTV, LLC, et al*., Case no. DC-13-07637, D.C, of the 68th Judicial District of Dallas, (the "Roberson Action").
   d.  *Joaquin v. Lonstein Law Offices, P.C. et al*., Case no. 3:15-cv-08194, U.S.D.C. N.J. (the "Joaquin Action"). The Perez Action, the US Nails Action, the Roberson Action, and the Joaquin Action are hereinafter sometimes collectively referred to as the "Actions".

17.    Plaintiffs' defense in the Actions was partially provided by its prior insurance carrier, Evanston Insurance Company ("Evanston").

18.    On or about July 31, 2021, Evanston denied further coverage, claiming that the prior policy was exhausted.

19.    Thereafter, Plaintiffs demanded that DIRECTV indemnify them for all remaining costs of litigation and costs incurred as a result of their representation of DIRECTV.

20.    Plaintiffs commenced an action against Evanston seeking a declaratory judgment ordering Evanston to defend and indemnify Plaintiff in the Perez Action.[1] (*Lonstein Law Office, P.C., Julie Lonstein and Wayne D. Lonstein v. AT&T Services, Inc, and DIRECTV, LLC*, Civil

_____

[1]   Plaintiffs and Evanston Insurance Company entered into a Stipulation of Settlement resolving the issues between the parties in the Indemnification Action.

4

Action No. 1:20-cv-09712 (the "Indemnification Action").  As DIRECTV refused to indemnify Plaintiffs, Plaintiffs were forced to serve its Second Amended Complaint naming DIRECTV and seeking, *inter alia*, indemnification against DIRECTV, pursuant to the Retainer Agreement and Wind Down Agreement in the Indemnification Action.

21.     Thereafter, Plaintiffs filed their Third Amended Complaint setting forth additional details omitted from its prior filings, including the Declaration of Kent Mader, which confirms that DIRECTV intended to and agreed to indemnify Plaintiffs for their costs related to the defense of the Actions.

22.      DIRECTV filed a motion to stay the Indemnification Action and compel arbitration.

23.     On or about January 6, 2022, Judge Lewis J. Liman granted DIRECTV's motion to stay the Indemnification Action and compel arbitration.

24.     Consequently, on or about April 4, 2022, Plaintiffs commenced the Arbitration. See, Exhibit "A".

25.     On or about June 6, 2022, DTV filed its answer and counterclaims in the Arbitration (the "Counterclaims").  See, Exhibit "B".

26.     Pursuant to the Policy, Plaintiffs submitted the Counterclaims for coverage to Defendant StarStone, and as fully set forth below, StarStone denied coverage.

**The Controversy between Plaintiffs and StarStone**

27.     There is no dispute that Plaintiffs and StarStone entered into the Policy and the Policy is a binding contract between the parties.  A copy of the Policy is annexed hereto as Exhibit "C".

28.   There is no dispute that the Policy was in effect from July 1, 2021 through July 1, 2022 and was further extended from July 1, 2022 through July 1, 2023.

29.   There is no dispute that the Policy was in effect at the time the Misappropriation Counterclaim was made and that the Counterclaims were timely submitted to Defendant.

30.   This action arises out of Plaintiffs dispute of StarStone's conclusion that the Misappropriation Counterclaim, alleged for the first time in the Arbitration, is part of a Related Wrongful Act as claimed by StarStone.

31.   Neither DIRECTV nor AT&T ever asserted a claim against Plaintiffs for Misappropriation of Trade Secrets.

32.   Plaintiffs have never submitted a claim to any prior insurer based upon the claim of Misappropriation of Trade Secrets or the facts related to the claim.

33.   As set forth in the Counterclaims, the allegations giving rise to the claim for Misappropriation of Trade Secrets is based upon the content of the Third Amended Complaint and specifically the inclusion of the Declaration of Kent Mader.

34.   The Counterclaims allege that the claim for Misappropriation of Trade Secrets arises from the filing of the Third Amended Complaint and is based upon the actions of Plaintiffs in or about March 3, 2022 when the Third Amended Complaint was filed.

35.   Upon receiving the Counterclaims, Plaintiffs submitted the Misappropriation Trade Secret Counterclaim, along with the other Counterclaims to StarStone to provide both a defense and coverage.  See, Exhibit "D"

36.   By letter dated August 2, 2022, StarStone denied coverage of the Counterclaims, including the Misappropriation of Trade Secret Counterclaim (the "August 2, 2022 Denial Letter").

37.     In denying coverage, the Denial Letter states as follows:

> StarStone has concluded that while the Counterclaims are a **Claim** first made against an **Insured** during the **Policy Period**, coverage is precluded for the Counterclaims pursuant to Exclusion III.A because it is a **Claim** based upon, arising out of, directly or indirectly resulting from, or in any way involve a **Related Wrongful Act** that has been the subject of any notice or Claim reported under any other policy of insurance.[2]

See, August 2, 2022 Denial Letter annexed hereto as Exhibit "E".

38.     On or about August 26, 2022, LLO sent a letter to StarStone asking that it reconsider its decision to deny coverage.  See, Exhibit "F".

39.     StarStone responded by dated September 14, 2022, in which is confirmed its initial decision to deny coverage. (the "September 14, 2022 Denial Letter).  A copy of the September 14, 2022 Denial Letter is annexed hereto as Exhibit "G".  The August 2, 2022 Denial Letter and the September 14, 2022 Denial Letter are hereinafter collectively referred to as the "Denial Letters".

40.     The Denial Letters wrongly assert that the Counterclaim for Misappropriate is based upon, arising out of, directly or indirectly resulting from, or in any way involve a **Related Wrongful Act** that has been the subject of any notice or Claim reported under any other policy of insurance.

41.     Contrary to StarStone's conclusion, the Counterclaims are not based upon, arising out of, directly or indirectly resulting from, or in any way involve a **Related Wrongful Act** that has been the subject of any notice or Claim reported under any other policy of insurance.

---

[2] Plaintiffs are not seeking coverage for the LBBS Lawsuit sought in the initial claim filed with StarStone.

42.     Claims that were previously submitted to Plaintiffs prior insurance company were related to conduct purportedly engaged in by Plaintiffs as alleged by the various plaintiffs in the Actions.

43.     All prior claims stemmed from purported actions undertaken by Plaintiffs during Plaintiffs representation of DIRECTV and against the plaintiffs in the Actions.

44.     The Misappropriation Counterclaim, which Plaintiffs currently seek a defense and coverage from StarStone, stem from a dispute between Plaintiffs and DIRECTV.   More specifically, Evanston provided a prior defense to Plaintiffs based upon unrelated allegations of fraud and extortion asserted by non-parties hereto and related to enforcement efforts undertaken by Plaintiffs in their representation of DIRECTV.

45.     The actions giving rise to the Misappropriation Counterclaim relate to DIRECTVs allegations that Plaintiffs, in an effort to defend themselves and seek indemnification from DIRECTV, wrongly filed confidential information on the public docket in the Indemnification Action.

46.      By way of background, Plaintiffs and DIRECTV entered into a joint defense agreement to govern the parties actions during the litigation of the Actions, which Plaintiffs complied.

47.     However, while working towards settlement in the Perez matter, DIRECTV entirely abandoned the joint defense agreement and sought to lay blame on Plaintiffs herein in a proposed settlement agreement submitted to the court in a publicly filed proposed settlement agreement.

48.     In the publicly filed proposed settlement agreement DIRECTV joined in a settlement with the plaintiffs therein and published defamatory and derogatory statements about Plaintiffs herein.

49.     In order to protect and defend itself, Plaintiffs herein were forced to file an objection in the Perez action and support their position by filing the Mader Declaration.

50.     Plaintiffs were further forced, as a result of DIRECTV's abandonment of the joint defense agreement and failure to indemnify Plaintiffs for the costs incurred in representing DIRECTV, to commence the Indemnification Action.

51.     The Misappropriation Counterclaim is a new claim asserted by DIRECTV against Plaintiffs, not based upon the conduct or action of Plaintiffs which is the subject of the underlying Actions, but rather the conduct and transactions directly between DIRECTV and Plaintiffs.

52.     There is no factual nexus between the claims asserted in the Actions and the claims asserted in the Misappropriation Counterclaim,

53.     Defendant StarStone is in default of its obligation under the Policy, by failing to provide coverage to the full limit of the Policy.

54.     Plaintiffs paid the premium due for the Policy based upon its understanding that the Policy provided coverage in the event a claim was asserted against the Plaintiffs.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment Against StarStone)

55.     Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" though "54" as if fully set forth herein.

56.     The Policy provides for $1,000,000.00 coverage for each claim.

57.     By reason of Defendant's denial of coverage as set forth in the Denial Letters, a present and actual controversy exists as to Defendant's obligation to provide coverage to Plaintiffs on the Misappropriation Counterclaim.

58.     Based upon the foregoing, Plaintiffs are entitled to a judgment pursuant to CPLR §3001 declaring that StarStone is obligated under the Policy to defend and indemnify Plaintiffs for the Misappropriation Counterclaim to the full extent of the Policy in the sum of $1,000,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract Against StarStone)

59.     Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" though "54" as if fully set forth herein.

60.     The Policy constitute a valid contract between Plaintiffs and StarStone.

61.     Defendants breached the Policy by, *inter alia*, denying defense coverage and refusing coverage on the Misappropriation Counterclaim.

62.     Plaintiffs have satisfied all of their obligations imposed upon them by the Policy, including making the payment of the insurance premiums.

63.     As a result of Defendant's breach of its obligations pursuant to the Policy, Plaintiffs have sustained damages in an amount to be determined at trial.

## AS AND FOR A THIRD AND ALTERNATIVE CAUSE OF ACTION
### (Specific Performance Against StarStone)

64.     Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" though "54" as if fully set forth herein.

65.     The Policy provides for $1,000,000.00 coverage for a defense and indemnification for each claim.

66.     Notwithstanding Plaintiffs full compliance with their obligations pursuant to the Policy, Defendant has failed to provide coverage as set forth in the Policy.

67.     Based upon the foregoing, Plaintiffs are entitled to an order of specific performance directing the Defendant to withdraw its disclaimer of coverage and provide Plaintiffs with a defense to the full extent of the Policy in the sum of $1,000,000.00.

**WHEREFORE**, for the foregoing reasons, Plaintiffs demands judgment against Defendant as follows:

a.   On the First Cause of Action against Defendant StarStone for judgment pursuant to CPLR §3001 declaring that StarStone is obligated under the Policy to defend and indemnify Plaintiffs from the Misappropriation Counterclaim to the full extent of the Policy in the sum of $1,000,000.00;

b.   On the Second Cause of Action against Defendant StarStone for a judgment in an amount to be determined at trial;

c.   On the Third Cause of Action against Defendant StarStone for an order directing the Defendant to withdraw its disclaimer of coverage and provide Plaintiffs with a defense to the Counterclaim;

d.   For such other and further relief as the Court deems just and proper.

**Dated: New York, New York**
**       October 12, 2022**

                                        **NESENOFF & MILTENBERG, LLP**
                                        *Attorneys for Plaintiffs*

                                 **By:**   */s/ Andrew T. Miltenberg*
                                        Andrew T. Miltenberg, Esq.
                                        Amy Zamir, Esq. (of counsel)
                                        363 Seventh Avenue, 5th Floor
                                        New York, New York 10001
                                        Telephone: (212) 736-4500
                                        amiltenberg@nmllplaw.com
                                        azamir@nmllplaw.com