UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LONSTEIN LAW OFFICE, P.C., et al.,

                Plaintiffs,

  -against-

STARSTONE SPECIALTY INSURANCE COMPANY,

                Defendant.

22-cv-8670 (AS)

MEMORANDUM OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge.

## BACKGROUND

Plaintiff Lonstein Law Office is a law firm that was retained by DIRECTV, nearly twenty years ago, to find and investigate those who were violating DIRECTV's terms of service. Compl. ¶ 12, Dkt. 1. Lonstein was sued several times for allegedly using aggressive and harassing tactics. ¶ 16. Lonstein had a professional insurance policy issued by Evanston Insurance, but that policy was exhausted by those suits in July 2021. ¶¶ 17–18. Lonstein then sued Evanston and DIRECTV for indemnification. ¶¶ 19–20. DIRECTV successfully compelled arbitration, which Lonstein filed, and DIRECTV filed its answer and counterclaims in that arbitration in June 2022. ¶¶ 22–25.

As part of its counterclaims, DIRECTV said Lonstein had misappropriated DIRECTV's trade secrets. ¶ 3. Lonstein allegedly did so by filing a declaration from a former DIRECTV employee in the indemnification suit. ¶¶ 33–34. Lonstein then asked Defendant StarStone (another insurance company from which it has a policy) to indemnify it for the trade-secrets claim. ¶ 35. StarStone denied coverage, so Lonstein filed this suit seeking declaratory and other relief. ¶¶ 36, 55–67.

Both sides agree that Lonstein made its claim when its 2021–2022 StarStone policy was in effect. *See* Dkt. 21-1 at 10; Dkt. 28 at 4. That policy covers claims against Lonstein, but it has this carve out:

> This Policy does not apply to any Claim made against the Insured … based upon, arising out of, directly or indirectly resulting from, or in any way involving any Wrongful Act or Related Wrongful Act or any fact, circumstance or situation that has been the subject of any notice or Claim reported under any other policy of insurance[.]

Dkt. 1-3 at 6.

And the policy has these definitions:

> C. Claim means … a written demand for monetary damages, including the service of suit or institution of arbitration proceedings, by reason of a Wrongful Act …. A

> Claim shall be deemed to have been first made at the time written notice of the Claim is first received by any Insured.
>
> …
>
> N. Related Wrongful Acts means Wrongful Acts which are the same or continuous or are logically or causally connected by any common fact, situation, circumstance, event, or transaction.
>
> …
>
> P. Wrongful Act means any actual or alleged act, error, omission, or Personal Injury arising out of Professional Services rendered by an Insured for others.

*Id.* at 4–6.

StarStone justifies its decision to deny coverage on two grounds. First, it says the trade-secrets claim is "based upon, arising out of, directly or indirectly resulting from, or in any way involving" the same "Wrongful Act" (Lonstein's allegedly extortive tactics) that was "the subject of [the] notice or Claim reported under [the Evanston] policy of insurance." Second, it says that even if the trade-secrets claim isn't itself based on the same Wrongful Act, DIRECTV's counterclaim must be evaluated as a whole, and the counterclaim's other causes of action are based on the same Wrongful Act. Because the first ground is enough to dismiss the complaint, the Court does not reach the second.

## LEGAL STANDARDS

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

The Court may consider the insurance policy at issue, which is attached as an exhibit to the complaint. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010). The Court may also take judicial notice of documents publicly filed in other cases. *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

## DISCUSSION

Under New York law, "[i]t is well established" that courts must "first look to the language of the [insurance] policy." *Roman Cath. Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 991 N.E.2d 666, 671 (N.Y. 2013) (citation omitted). That language should be "interpreted according to common speech and consistent with the reasonable expectation of the average insured." *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1151 (N.Y. 2016) (citation omitted). And though ambiguities must be construed in the insured's favor, an insurance policy is "not ambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the

purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* (cleaned up). Particularly when "an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language." *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 908 N.E.2d 875, 877 (N.Y. 2009) (citation omitted).

The language here is clearly and unmistakably broad. The policy excludes any claim "arising out of, directly or indirectly resulting from, or in any way involving any Wrongful Act" that was previously the subject of a claim to another insurer. Dkt. 1-3 at 6. This language captures any underlying Wrongful Act that has "some causal relationship to," "contributed to," or has "some kind of connection or relationship" to the present claim. *Maroney v. N.Y. Cent. Mut. Fire Ins. Co.*, 839 N.E.2d 886, 889 (N.Y. 2005); *Daileader v. Certain Underwriters at Lloyd's London - Syndicate 1861*, 2023 WL 3026597, at *23 (S.D.N.Y. Apr. 20, 2023), *aff'd*, 2023 WL 7648381 (2d Cir. Nov. 15, 2023); *Darwin Nat. Assur. Co. v. Westport Ins. Corp.*, 2015 WL 1475887, at *13 (E.D.N.Y. Mar. 31, 2015).

Lonstein has not offered an alternative reading of these terms. It emphasizes that ambiguous terms must be read in favor of the insured, but it doesn't explain why the terms are ambiguous. Dkt. 28 at 14–15. Lonstein also relies heavily on *Glascoff v. OneBeacon Midwest Ins. Co.*, 2014 WL 1876984 (S.D.N.Y. May 8, 2014). But that case interpreted different language. The policy there required the claims to "have as a common nexus any fact, circumstance, situation, event, [or] transaction." *Id.* at *1. The court interpreted that language to require "specific overlapping facts." *Id.* at *6. Here, the language is both clearer and broader. Rather than a "common nexus," the policy here requires that the instant claim merely "indirectly result[] from, or in any way involv[e]" the underlying wrongful act. Similarly, Lonstein cites a case interpreting "related wrongful acts" when the term was undefined. *See Dormitory Auth. of N.Y. v. Cont'l Cas. Co.*, 756 F.3d 166, 169–70 (2d Cir. 2014). Again, that case sheds no light on this policy.

Applying this policy's broad terms, Lonstein's investigative tactics have "some kind of connection" to the trade-secrets claim. Lonstein's tactics led to the lawsuits against it, and when it tried to get DIRECTV to indemnify it for those lawsuits, it filed the declaration leading to the trade-secrets claim. So Lonstein's alleged tactics were a but-for cause of its alleged trade-secrets violation, even if there were also other causes or intervening events. *See Cali v. Merrimack Mut. Fire Ins. Co.*, 43 A.D.3d 415, 417–18 (N.Y. App. Div. 2007). True, this relationship takes a few steps. But the policy doesn't require a strong or close relationship. It excludes "any" claim "indirectly resulting from" or "in any way involving" a previously claimed wrongful act.

Even Lonstein's attempt to argue the opposite merely proves the point:

> Claims that were previously submitted to [Lonstein's] prior insurance company were related to conduct purportedly engaged in by [Lonstein] as alleged by the various plaintiffs in the DIRECTV Actions. All prior claims stemmed from purported actions undertaken by [Lonstein] during [its] representation of DIRECTV and against the plaintiffs in the Actions.

3

> The current controversy … is unrelated to the claims previously made against [Lonstein]. The prior claims allege wrongdoing by [Lonstein] in various actions stemming from DIRECTV's programming and installation practices, whereas the Counterclaim references conduct between [Lonstein] and Non-party DIRECTV and stems from the breach of Non-Party DIRECTV's obligation to absorb the costs incurred by [Lonstein] in defending the DIRECTV Actions.

Dkt. 28 at 6. Boiled down, Lonstein is saying that the previous claims "stemmed from purported actions undertaken by [Lonstein] during [its] representation of DIRECTV," whereas the trade-secrets claim "stems from … DIRECTV's obligation to absorb the costs … in defending the DIRECTV Actions." These claims are all plainly related. The "costs" that Lonstein wanted DIRECTV to "absorb" (what the trade-secrets claim "stems" from, according to Lonstein) were those incurred defending the claims arising from Lonstein's collection efforts on DIRECTV's behalf (the subject of the Evanston claims). On Lonstein's own description, the trade-secrets claim at the very least "indirectly result[s] from" or "in any way involve[s]" Lonstein's "purported actions" that were the subject of the Evanston claims.

Finally, Lonstein says this case cannot be decided on a motion to dismiss. It says the Court cannot compare the complaint in the Evanston action to DIRECTV's counterclaims to decide whether they are related. Dkt. 28 at 16. But the complaint itself documents the relevant relationship. The complaint explains that Lonstein's defense in the collection suits "was partially provided by its prior insurance carrier, Evanston." ¶ 17. After the policy was exhausted, Lonstein demanded that DIRECTV indemnify it. ¶ 19. That demand led to the lawsuit that included the declaration supposedly exposing DIRECTV's trade secrets. ¶ 21. That declaration is the basis for the counterclaim on which Lonstein is seeking coverage. ¶¶ 33–35. And more broadly, courts in this circuit have not hesitated to take judicial notice of publicly available pleadings to decide the applicability of policy exclusions on motions to dismiss. *See, e.g.*, *Knox v. Ironshore Indem. Inc.*, 2021 WL 5910112, at *4 (S.D.N.Y. Dec. 10, 2021), *aff'd*, 2022 WL 2236951 (2d Cir. June 22, 2022).

## CONCLUSION

For these reasons, the motion to dismiss is GRANTED. Plaintiffs' claims are dismissed WITH PREJUDICE. The Clerk of Court is directed to enter judgment for Defendant and close this case.

SO ORDERED.

Dated: February 13, 2024
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge